Okay. And with respect to that issue, we believe we have it simple and straightforward. And unless the court has further questions, I'll reserve the rest for rebuttal. Certainly council. Thank you. Mr. Owen. Thank you, Your Honor. Judge Easterbrook and may it please the court. My name is Matt Owen. I'm from Kirkland and Ellison. I represent the defendants at Belize in this case. I'd like to begin where Your Honor left off. I realize we didn't think of that issue either. No, you didn't. But it is jurisdictional. The only case. What would be the basis for ordering a cartel to admit a new member? Now that you mentioned it, Your Honor, I'm not aware of any such basis. I can think of one case. You had to wait for him to raise it? I'm sorry, Your Honor. You had to wait for Judge Easterbrook to raise it? You never thought of it? In the argument you did raise, and on which you persuaded the district court, so far as I can see, has no support whatever in antitrust law. The argument that you have to apply to a cartel for membership and get turned down and only then bring an antitrust claim is, well, is there any support for that anywhere? I think there is, Your Honor, and I think it's not an antitrust-specific doctrine, but if you read. . . There are many doctrines that are not antitrust-specific. One reason it's not antitrust-specific is that antitrust law doesn't regulate cartel membership. I agree, Your Honor. The position that we did advance in the district court and in our briefs here I think does have some support in, for example. . . It has nothing to do with standing, right? The argument you're making, which might be a good argument under the law of private clubs in Illinois, is a variant of Pullman abstention. That is, that the federal court should wait until this organization has interpreted its own rules. That has nothing to do with standing. No one thinks that Pullman abstention is a jurisdictional doctrine. Well, with respect, Your Honor, in this court's opinion in Freedom from Religion Foundation, in which it required an atheist to apply for the parsonage exemption before he had standing to challenge its future denial of that exemption, the court discussed the Supreme Court's decision in the Moose Lodge case, which is pretty much exactly that. An African-American man wanted to apply for membership in an all-white private organization. The district court reversed the decree of the district court. As I say, this might be an application of the law of clubs, which is a well-developed state law doctrine, but it has nothing to do with antitrust law. Well, Your Honor, I don't understand, as I said to your colleague, why this is an antitrust case in federal court rather than a contract case. Illinois treats the law of clubs as an application of the law of contracts, rather than a contract case in state court. I agree that there is not a substantial federal question in the case. The one case I can think of off the top of my head is the 10th Circuit's opinion in Four Corners Nephrology, which I think then-Judge Gorsuch wrote for the court, which says exactly what Your Honor said to my friend on the other side, that you cannot use antitrust law to complain that a cartel should be expanded by one and you should be the one who can also reap the same amount of rents. And to the extent that their subject matter jurisdiction in federal court is premised on that being a substantial federal claim, I agree that it is not. I do think there is additionally, if, for example, you read the Supreme Court's decision in Lujan in Part 3A, which does speak for the court, footnote 2, this is what Justice Scalia says for the court about the eminence requirement in Article 3. He says it is stretched beyond its breaking point, where the plaintiff alleges only an injury at some indefinite future time and the acts necessary to make the injury happen are at least partly within the plaintiff's own control. In such circumstances, we have insisted that the injury proceed with a high degree of immediacy. I do think that that describes this case, and it would describe this case whatever the cause of action that they purported to allege in the complaint might be, whether it were antitrust law or any other kind of law, including the law of clubs if it were a diversity case or something else. That is, I think, the right... It can't be a diversity case, as I understand it. I agree, Your Honor. The point I was making is that if there were diversity jurisdiction over a claim under the Illinois law of clubs, for example, the plaintiff would still have to show that they satisfied Article 3's injury and fact requirement. Well, yes, in federal court, Illinois can have whatever requirements it wants. Completely. This case, having been filed in federal court, the plaintiff is still subject to Lujan, Freedom from Religion Foundation, Moose Lodge, O'Trumkey, and all kinds of cases which say that whatever the cause of action, if what you're complaining about is that I have an application sitting on my desk for membership in an organization or for benefit or an exemption, and I believe that it will be denied by the defendant, I don't have to file it. And I think the rationale for those cases, especially Freedom from Religion Foundation and O'Trumkey, can be found in this note in Lujan which says the plaintiff himself... So you think the federal judiciary can't adjudicate claims of anticipatory breach of contract? Until the contract has actually been breached, there's no case or controversy. We have anticipatory breach cases all the time. Sure, as I understand it, Your Honor, the law of anticipatory breach normally requires some reason to believe that the contract will be breached. It requires a reason, right? And, of course, the plaintiffs are given a reason. It may be good or bad, but they do have a reason. In this case, Your Honor, the reason is, as Justice Scalia said for the court in Lujan, partly within the plaintiff's own control. That is, they have, they agree, they plead, an application on their desk. They say that if they file it, it will be denied because the association, whose bylaws give it substantial discretion, will choose to exercise that discretion against it. So do you think the Pullman abstention doctrine is jurisdictional? That you have to apply to the State Public Utilities Commission and get its decision? As a condition of federal jurisdiction, the Supreme Court describes it as a discretionary doctrine, which a jurisdictional doctrine is not. No, Your Honor, I don't think that that is an Article III doctrine. I agree with you. I think that in Pullman cases there is usually a... This seems to be, however, a Pullman claim at the level of a private organization. I don't think that this case could be described as any different than Moose Lodge in that respect. In that case, the private organization's rules said two things. One, only Caucasians could be members, and two, members' guests had to be Caucasian. The district court granted relief to a plaintiff, a black man, who had not applied for membership, but who had been denied access as a guest. The court held that he had no standing to challenge the rule about membership because he hadn't applied for it, but he did have standing to challenge the second rule because he had been denied access as a guest of an actual member. That case arose on direct appeal, and it is good law. This court described it in Freedom from Religion Foundation and explained that it is an Article III proposition for which there really was no futility exception. So I agree with Your Honor that there may be cases in which that set of facts is not squarely presented, where there may be an injury in fact of some kind that yet some non-constitutionally jurisdictional doctrine of abstention or deference to state courts may yet be applicable. But under Moose Lodge and Freedom from Religion Foundation and O'Trumpki, the situation where a plaintiff's complaint is that an application is going to be denied is not one of them, unless he files that application for the reason that whether the events necessary to make his injury happen at all are partly within his own control. Unless the court has other questions about the remaining issues, which I think are adequately described in the briefs, the only point I wanted to make about my friend's challenge to the district court's denial of leave to amend the complaint is I wanted to point the court to page 10 of the district court's opinion in which the district judge quotes paragraph 59 of their original complaint, which says substantially the same thing that their proposed amendment language would allege if you read footnote 10 on page 7 of their opposition to the motion to dismiss, the only place in which the plaintiff asks for leave to amend and suggests what that new amended complaint would include that was not already in the original complaint. What they say is that someone will be able to plead, they will plead that a person on AHAI's tier 2 committee told someone else, not them, that AHAI was not looking to add another tier 2 team. The complaint already alleged a better version of that fact, which is that in paragraph 59 they say AHAI told Black Bear directly that it was not looking to add another team. I'm sorry, I'm lost. AHAI? I'm sorry, the Amateur Hockey Association. If you would use real words, that would help us generalize. I'm happy to do so. I apologize. I mean the defendant, the Amateur Hockey Association of Illinois. The point I was making is that their request for leave to amend is reviewed for abuse of discretion and the substance of their request was both thin and duplicative of what they had both already pled and that the district court's opinion says he accepted as true but simply insufficient to establish the necessary imminence of their injury in fact. Unless the court has other questions, we submit the judgment should be affirmed and we thank your honors for your attention. Thank you. Mr. Olszewski, anything further? Your honors, if I may elaborate and I guess further my response to one of your questions, Judge Easterbrook. Your question, as I understand it, is whether there's a case about membership in the cartel and I understand the court's analysis would be, look, in a case that is a frivolous case, there's no subject matter jurisdiction and, your honor, I would assert if that is the question, I understand that test exists, the real question should be whether Section 2 can apply to an Amateur Sports Association and, your honor, there is precedent for that. We've cited it to the district court. You'll see in the record there's a Minnesota made hockey which found Section 2 to apply. I'm not asking whether Section 2 applies to a particular group. I'm asking whether there is any plausible antitrust claim that antitrust law can be used to compel a cartel to admit a new member. Your honor. I've looked for that. Right. And not found any such thing. Maybe before you filed this suit, you looked and did find such a thing and if so, this would be a good time to let us know. Your honor, we also applied a claim for damages. You say also. Right. I take it that means you didn't find any such authority either. Well, your honor, the claim, the injunctive issue is that it's a monopolization over amateur youth hockey. Right. If we could have a club that was not an A-high club and participate with it. Not a what club? Your honor, you're correct. The Amateur Hockey Association, the defendant, which we refer to as A-high. No, don't refer to it as that. Right. The Amateur Hockey Association. Give us real words. The Amateur Hockey Association of Illinois. You can also call them the defendant. The defendant. They have a monopoly over amateur youth hockey. Right. A remedy and the issue is they run that monopoly. We want a bigger share of the cartel profits. It is no better than we want to be admitted to the cartel. What federal courts do with cartels is disestablish them, not regulate their membership or divvy up their profits. Understood, your honor. But one remedy, which I believe would fit, would be to allow the members of the cartel to play our club. Currently, the cartel does not allow that. We don't necessarily want membership. We just want a right to participate in the market, that market being amateur youth hockey. Your claim in this lawsuit is that your injury is that you aren't a member. You haven't asked the district court to disestablish the Hockey Association, to declare it to be a cartel and enjoin its existence. We have not asked for that. Or refer it for criminal prosecution. We have not asked for that relief. No, you haven't. We've asked for damages and we've asked for an injunction, an injunction of relief allowing us to have a club. Your honor, I appreciate your time this morning. Thank you. The case will be taken under advisement.